UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                              Chapter 11

CARGO WORKSHOP INC.,                                Case No.: 19-42124 (CEC)

                          Debtor.
-------------------------------------------------------------X

### SECOND AMENDED DISCLOSURE STATEMENT FOR SMALL BUSINESS[1] UNDER CHAPTER 11 FOR PLAN OF REORGANIZATION OF THE DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE FIRST AMENDED PLAN OF REORGANIZATION.**

**THE DEBTOR IN THIS CASE IS A SMALL BUSINESS. AS A RESULT, THE DEBTOR MAY DISTRIBUTE THIS DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE COURT. IF AN OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.**

LAWRENCE F. MORRISON
BRIAN J. HUFNAGEL
MORRISON TENENBAUM PLLC
87 Walker Street, Floor 2
New York, New York 10013
Telephone: (212) 620-0938
Facsimile: (646)390-5095

ATTORNEYS FOR THE DEBTOR

---

[1] Adapted from Official Form 425B

# TABLE OF CONTENTS

I.      Introduction ......................................................................................................... 1

a.      Purpose of This Document ................................................................................. 1

b.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............................ 2

c.      Disclaimer.......................................................................................................... 2

II.     Background.......................................................................................................... 3

a.      Description and History of the Debtor's Business ...................................... 3

b.      Insiders of the Debtor ....................................................................................... 3

c.      Management of the Debtor During the Bankruptcy .................................... 3

d.      Events Leading to Chapter 11 Filing.............................................................. 3

e.      Significant Events During the Bankruptcy Case ......................................... 4

f.      Projected Recovery of Avoidable Transfers and Other Actions ............................ 4

g.      Claims Objections.............................................................................................. 5

h.      Current and Historical Financial Conditions ............................................... 5

III.    Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests........ 5

a.      What is the Purpose of the Plan of Reorganization? ................................. 5

b.      Unclassified Claims ........................................................................................... 6

i.      Administrative expenses, involuntary gap claims, and quarterly and Court fees.................. 6

ii.     Priority tax claims.............................................................................................. 7

c.      Classes of Claims and Equity Interests.......................................................... 8

i.      General Unsecured Claims ............................................................................... 8

ii.     Classes of equity interest holders ................................................................... 9

d.      Means of Implementing the Plan.................................................................... 9

i.      Source of payments ........................................................................................... 9

ii.     Post-confirmation Management .................................................................... 10

e.      Risk Factors ...................................................................................................... 10

f.      Executory Contracts and Unexpired Leases................................................ 10

g.      Tax Consequences of the Plan....................................................................... 11

IV.     Confirmation Requirements and Procedures ................................................ 11

a.      Who May Vote or Object ................................................................................ 12

i.      What is an allowed claim or an allowed interest? ...................................... 12

ii.     What is an impaired claim or impaired equity interest?............................ 13

iii.    Who is not entitled to vote.............................................................................. 13

iv.   Who can vote in more than one class .................................................................. 14

b.   Votes necessary to Confirm the Plan .................................................................. 14

i.   Votes necessary for a class to accept the plan .................................................... 14

ii.   Treatment of non-accepting classes of secured claims, general unsecured claims, and interests ...................................................................................................................... 14

c.   Liquidation Analysis ............................................................................................ 15

d.   Feasibility ............................................................................................................ 15

i.   Ability to initially fund plan ............................................................................... 15

ii.   Ability to make future plan payments and operate without further reorganization .............. 16

V.   Effect of Confirmation of Plan ............................................................................ 16

a.   Discharge of Debtor ............................................................................................. 16

b.   Modification of Plan ............................................................................................ 17

c.   Final Decree ......................................................................................................... 17

VI.  Other Plan Provisions ......................................................................................... 18

a.   Statutory Fees ...................................................................................................... 18

b.   Quarterly Reports ................................................................................................ 18

c.   Re-vesting of Assets and Continuing Existence ................................................. 18

d.   Unclaimed Property ............................................................................................. 19

e.   Retention of Jurisdiction ..................................................................................... 19

f.   Injunction and Exoneration ................................................................................. 20

g.   Effective Date ...................................................................................................... 20

h.   Deadline to File Ballots and Voting .................................................................... 21

EXHIBIT A:  PLAN OF REORGANIZATION ....................................................... 22

EXHIBIT B:  VALUE OF DEBTORS' ASSETS ..................................................... 23

EXHIBIT C:  MOST RECENT OPERATING REPORT ......................................... 24

EXHIBIT D:  LIQUIDATION ANALYSIS .............................................................. 25

EXHIBIT E:  EFFECTIVE DATE PAYMENTS ...................................................... 26

EXHIBIT F:  PROJECTIONS .................................................................................. 27

## I. Introduction

This is the second amended disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of Cargo Workshop Inc. (the "Debtor").  This Disclosure Statement provides information about the Debtor and the Plan filed on July 29, 2019 (the "Plan") to help you decide how to vote.

A copy of the Plan is attached as *Exhibit A*.  **Your rights may be affected.**  You should read the Plan and this Disclosure Statement carefully.  You may wish to consult an attorney about your rights and your treatment under the Plan.

The proposed distributions under the Plan are discussed at pages 6-9 of this Disclosure Statement.  General unsecured creditors are classified in Class 1 and will receive a distribution of approximately 12.18% -- 25.72% of their allowed claims to be distributed as follows: monthly payments over a period of 36 months plus distribution to creditors of any amount collected on pre-petition accounts receivable.

### a.  Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**b. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. A separate order has been entered (please refer to the Order for information concerning the confirmation hearing and objection deadline) setting the following information:

- Time and place of the hearing to finally approve this disclosure statement and confirm the plan,

- Deadline for voting to accept or reject the plan; and

- Deadline for objecting to the adequacy of disclosure and confirmation of the plan.

If you need additional information about the Plan, deadlines for objections, or the voting procedure, you should contact the Debtor's counsel: Morrison Tenenbaum PLLC, 87 Walker Street, New York, New York 10013, Telephone: (212) 620-0938, Facsimile: (646)390-5095, Attn: Brian J. Hufnagel, Esq., bjhufnagel@m-t-law.com

**c. Disclaimer**

**THE COURT HAS CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT ITS TERMS. THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT DOES NOT**

**CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR**

**A RECOMMENDATION THAT IT BE ACCEPTED.**

## II. Background

### a. Description and History of the Debtor's Business

The Debtor operates a home improvement and general construction business in the New York City area primarily focused on residential apartment renovations, boutique restaurants, and retail projects.

### b. Insiders of the Debtor

The insiders of the Debtor are Javier Carcamo who is the President and a 50% owner and Dylan Gould who is the Secretary and a 50% owner. Both insiders work full time at the business.

### c. Management of the Debtor During the Bankruptcy

Javier Carcamo and Dylan Gould both supervise everything that happens with the business. They are involved in all of the day-to-day activities, including hiring and firing, scheduling, payroll processing, ordering supplies, handling paperwork, dealing with customers, and overseeing the construction projects. Their current salary is $1,750 per week, each.

### d. Events Leading to Chapter 11 Filing

The bankruptcy filing was necessitated by a breach of contract lawsuit that the Debtor could no longer afford to defend, *Cheryl Clements v. Cargo Workshop, Inc.;* Index No. 655908/2017 (N.Y. Cty. Sup. Ct.), as well as debt that the Debtor could no longer afford to keep servicing including a high interest loan from Kabbage, Inc. in the amount of approximately $70,000.

**e.  Significant Events During the Bankruptcy Case**

- On April 9, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the bankruptcy code.  No creditors committee, examiner, or trustee has been appointed in this case.

- On May 1, 2019, the Court entered an order setting July 1, 2019 as the bar date by which proofs of claim must be filed.  The bar date for governmental creditors was fixed for October 7, 2019.

- On April 30, 2019, the Court entered an order authorizing the Debtor to retain Morrison Tenenbaum PLLC as counsel to the Debtor.

- After expiration of the bar date, the Debtor filed its plan of reorganization.

**f.  Projected Recovery of Avoidable Transfers and Other Actions**

Based upon a review of the Debtor's records, the Debtor does not believe that there are any actionable preference actions pursuant to section 547 of the Bankruptcy Code.

In the event that the Plan is not confirmed, the Debtor reserves the right to bring such actions if further review of its books and records discloses an actionable claim.

The Debtor's books and records show three accounts receivable that are due from Zaferon Grill in the amount of $67,052.85, Le Pierre Restaurant in the amount of $204,901.48, and Sapoara Restaurant in the amount of $97,609.92.  Collectability of these receivables is uncertain.  Both Zaferon Grill and Le Pierre Restaurant have closed.  The Debtor intends to pursue all three receivables prior to or after confirmation.

The Debtor's books and records also show that a receivable is due from Cheryl Clements in the amount of $46,500.  Ms. Clements filed a proof of claim in the Debtor's case claiming that the Debtor owes her $277,505.62.  As discussed further below, the Debtor intends to object to Ms. Clements claim post-confirmation.

### g.  Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  Disputed claims are treated in Article 5 of the Plan.

The Debtor intends to object to claim no. 4 filed in the amount of $277,505.62 by Cheryl Clements which is an unliquidated claim based upon a New York State court lawsuit.  Ms. Clements alleges breach of contract and negligence in connection with the renovation of a two-family building.  The Debtor believes this claim is overstated, that all required work was performed by the Debtor, and that Ms. Clements owes the Debtor $46,500.

With respect to any claim that has been objected to, the Debtor shall make monthly payments to be held in escrow by counsel to the Debtor pending a final order on the claim objection.

Pursuant to the Plan, all claim objections will be filed no later than 90 days after entry for the confirmation order, unless extended pursuant to order of the Court.

### h.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in *Exhibit B.*

The most recent post-petition operating report filed since the commencement of the case is set forth in *Exhibit C.*

### III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

### a.  What is the Purpose of the Plan of Reorganization?

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### b. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. Therefore, the Plan Proponent has *not* placed the following claims in any class:

### i. Administrative expenses, involuntary gap claims, and quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 503(b) of the Bankruptcy Code. Administrative expenses include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under § 330(a) of the Bankruptcy Code. The Bankruptcy Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. Involuntary gap claims allowed under § 502(f) of the Bankruptcy Code are entitled to the same treatment as administrative expense claims. The Bankruptcy Code also requires that fees owed under section 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

The following chart lists the Debtor's estimated administrative expenses, and quarterly and court fees, and their proposed treatment under the Plan:

| Type | Claim No. | Estimated Amount Owed | Proposed Treatment |
|---|---|---|---|
| Administrative expenses | n/a | Morrison Tenenbaum PLLC Estimated unpaid fees through confirmation: $15,000.00 | Paid in full on the effective date of the Plan unless the holder of a particular claim has agreed to different treatment |
| Statutory Court fees | n/a | $0.00 | Paid in full on the effective date of the Plan |
| Statutory Quarterly fees | n/a | Current[2] | Paid in full on the effective date of the Plan |
| **Total** | | $15,000.00 | |

## ii. Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Bankruptcy Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief.

Under § 1129(a)(9)(C), holders of § 507(a)(8) claims are paid, over a period not later than 5 years after the order for relief, the allowed amount of their claim.

- The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment:

---

[2] Any outstanding fees owed to the U.S. Trustee will be paid prior to the confirmation hearing.

| Name and type of tax | Claim No. | Priority Amount of Claim | Treatment |
|---|---|---|---|
| New York State Department of Taxation & Finance | 3 | $57.45 | Paid in full on the effective date of the Plan |

### c. Classes of Claims and Equity Interests

### i. General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  The Debtor has placed its general unsecured creditors in one class.  This class will receive a distribution from a plan fund of $36,000.00, to be funded by the Debtor over a period of 36 months plus amounts collected from pre-petition receivables.  The Debtor estimates that unsecured creditors will receive a distribution of 12.18% of their claim if zero receivables are collected and that the distribution will be 25.72% with receivables.  This amount may change in the event that the Debtor successfully collects the three accounts receivable or sustains an objection to the claim of Cheryl Clements.

The following chart identifies the Plan's proposed treatment of class 2, which contains general unsecured claims against the Debtor:

| Class | Description | Impairment? | Treatment |
|---|---|---|---|
| 1 | All general unsecured claims | Impaired | These claims will be paid a distribution from a plan fund of $36,000 plus funds received from litigation to collect pre-petition accounts receivable.  The $36,000 fund shall be payable by the Debtor in 36 monthly installments of $1,000 each.  The Debtor estimates that unsecured creditors will receive a distribution of 12.18%-25.72% of their claim. |

### ii. Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the debtor is the equity interest holder.  The Debtor's equity is owned 50% by Javier Carcamo and 50% by Dylan Gould who will retain their equity interests in exchange for a new value contribution in the amount of $7,500.00 each, for a total of $15,000.00.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class | Description | Impairment? | Treatment |
|-------|-------------|-------------|-----------|
| 2 | Equity interest holders of the Debtor | Unimpaired | Under the Plan, equity interest holders will retain their interests. |

### d. Means of Implementing the Plan

### i. Source of payments

Payments and distributions under the Plan will be funded by a $15,000.00 contribution by the Debtor's principals Javier Carcamo and Dylan Gould to be paid from their personal funds which will be used to fund the administrative expenses of the case.  By signing this amended Disclosure Statement below, Mr. Carcamo and Mr. Gould represent that they have the fuynds available toi makje the plan contribution.  The plan contribution shall be funded prior to the hearing on confirmation of the Plan.  Unsecured creditors will receive pro-rata distributions from a fund of $36,000, to be funded by monthly contributions by the Debtor in the amount of $1,000 paid out over 36 months plus amounts collected from litigation commenced to collect pre-petition accounts receivable.  The Debtor shall be the disbursing agent under the Plan (the "Disbursing Agent").

### ii.  Post-confirmation Management

The Debtor will continue to be managed by Javier Carcamo and Dylan Gould post-confirmation.  Their salary will each continue to be $1,750 per week.

### e.  Risk Factors

The proposed Plan has the following risks:

Changes in the economy and the New York construction market could affect the Debtor's ability to make payments and other distributions required under the Plan.

The collectability of prepetition accounts receivable will affect the amount distributed to creditors.

A further risk is that the Plan may not be accepted by creditors.

### f.  Executory Contracts and Unexpired Leases

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan.  *Assumption* means that the Debtor have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Article 6 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

The Debtor does not have any executory contracts to assume or reject.

All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion

to assume, and if applicable assign, will be assumed under the Plan.  Consult your advisor or attorney for more specific information about particular contacts or leases.

If you object to the retention of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### g.  Tax Consequences of the Plan

The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

**THE PROPONENT DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.**

## IV. Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code. These include the requirements that:

- The Plan must be proposed in good faith;

- If a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders;

- The Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

- The Plan must be feasible.

These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### a. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both

(1) Allowed or allowed for voting purposes and

(2) Impaired.

In this case, the Plan Proponent believes that class 1 is impaired and entitled to vote to accept or reject the Plan. The Plan Proponent believes that class 2 is unimpaired and that holders of claims in this class, therefore, do not have the right to vote to accept or reject the Plan.

### i. What is an allowed claim or an allowed interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either

(1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or

(2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was January 16, 2019**

### ii.  What is an impaired claim or impaired equity interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered *impaired* if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### iii.  Who is not entitled to vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan and the adequacy of the Disclosure Statement.**

### iv.  Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### b.  Votes necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:

(1)      all impaired classes have voted to accept the Plan; or

(2)      at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section b.ii.

### i.  Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1)  the holders of more than ½ of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2)  the holders of at least ⅔ in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least ⅔ in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### ii.  Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds non-accepting classes is

commonly referred to as a *cram down* plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not *discriminate unfairly*, and is *fair and equitable* toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a *cram down* confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### c.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  The Debtor believes that in a chapter 7 liquidation unsecured creditors would receive a 1.67% distribution and that, under the Plan, creditors will receive a 12.18% -- 25.72% distribution.  A liquidation analysis is attached to this Disclosure Statement as *Exhibit D*.

### d.   Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### i.   Ability to initially fund plan

The Plan Proponents believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that

date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as *Exhibit E*.

### ii.  Ability to make future plan payments and operate without further reorganization.

The Plan Proponents must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the debtors' businesses.

The Plan Proponents have provided projected financial information.  Those projections are listed in *Exhibit F*.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes that is sufficient to fund all payments required by the Plan.

The final Plan payment is expected to be the last installment payment to general unsecured creditors, in approximately September 2023, 36 months after the effective date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## V.  Effect of Confirmation of Plan

### a.  Discharge of Debtor

**Discharge if the Debtor is a corporation and § 1141(d)(2) is not applicable.**  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

(1) Imposed by the Plan, or

(2) To the extent provided in 11 U.S.C. § 1141(d)(6).

### b.  Modification of Plan

The Plan Proponents may modify the Plan at any time before confirmation of the Plan.

However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponents may also seek to modify the Plan at any time after confirmation

only if:

(1) The Plan has not been substantially consummated and

(2) The Court authorizes the proposed modifications after notice and a hearing.

### c.  Final Decree

Pursuant to EDNY LBR 3022-1, the Debtor shall file a final decree motion with the

Court on notice to the Office of the United States Trustee within 14 days following the full

administration of the Debtor's estate.  Upon request, the Court may reduce or extend the time to

file such application.

## VI. Other Plan Provisions

### a. Statutory Fees

Statutory fees, and any applicable interest thereon, are all fees payable pursuant to chapter 123 of title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. § 1930(a)(6) and interest, if any, required to be paid by 31 U.S.C. §3717 (collectively, "U.S. Trustee Fees").  U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.  The Debtor shall remain responsible for any and all U.S. Trustee fees that become due and shall pay same on a timely basis.

### b. Quarterly Reports

Until the Chapter 11 Cases is closed, converted or dismissed, whichever is earlier, the Reorganized Debtor shall file quarterly reports setting forth the status of Distributions to holders of Allowed Class 1 Claims. The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Disbursing Agent shall maintain an accurate register of the General Unsecured Claims.

### c. Re-vesting of Assets and Continuing Existence

As of the Effective Date, pursuant to provisions of Bankruptcy Code sections 1141(b) and (c), all property and assets of the Debtor and the Debtor's estate shall be transferred to and shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and the Confirmation Order.

Unless otherwise agreed to by the claimant, immediately after the earlier of a Final Order of the Bankruptcy Court or the occurrence of the Effective Date, the Debtor or the Post-Confirmation Debtor shall pay all Allowed Administrative Expense Claims, including Fee Claims.

From and after the Effective Date, the Post-Confirmation Debtor will continue in existence and shall be vested with all of the Debtor's assets. In addition, the Debtor's ownership interests will be unaffected by confirmation of the Plan.

### d.  Unclaimed Property

The Post Confirmation Debtor shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the respective holders of Claims entitled thereto under the terms of the Plan.

At the end of one (1) year following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, and all right, title and interest in and to such property shall be vested in the Debtor.

### e.  Retention of Jurisdiction

Notwithstanding Confirmation, the Court shall retain jurisdiction for the following purposes:

(1)    Determination of the allowability of Claims upon objections filed to such Claims, and any pending litigation by the Debtors or by creditors or third parties;

(2)    Determination of requests for payment of Claims and fees entitled to priority under § 507;

(3)    Resolution of any disputes concerning the interpretation of the Plan;

(4)    Implementation of the provisions of the Plan;

(5)     Entry of Orders in aid of Consummation of the Plan;

(6)     Modification of the Plan pursuant to § 1127 of the Code;

(7)     Adjudication of any causes of action including voiding powers actions commenced by the Debtors-in-Possession; and

(8)     Entry of a Final Decree and closing the case

## f.  Injunction and Exoneration

Except as otherwise provided in the Plan or Confirmation Order, on and after the Confirmation Date, all entities which have held, currently hold, or may hold a debt, claim, other liability of interest against the Debtor pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner or judgment, award, decree, order other than as permitted under sub-paragraph (a) above; and (c) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under this Plan.

## g.  Effective Date

The Plan shall be effective and binding on the Effective Date.  The Effective Date shall be the date of initial distributions under the Plan which shall occur no later than 14 days after entry of the Confirmation Order.  It will be a condition to the Effective Date that each of the following provisions, terms, and conditions will have been satisfied pursuant to the provisions of the Plan:

(1) The Confirmation Order shall have been entered by the Court and shall not be subject to any stay or subject to an unresolved request for revocation under Section 1144 of the Bankruptcy Code.

(2) The Debtor shall have paid initial distributions required by the Plan.

**h.  Deadline to File Ballots and Voting**

The Court has set _____, 2019 as the deadline for filing ballots and to vote in

favor of or against confirmation.  Original ballots shall be delivered to Morrison Tenenbaum

PLLC, 87 Walker Street, 2nd Floor, New York, NY 10013, Attn: Brian J. Hufnagel, Esq.

Dated:  New York, New York
            September 17, 2019                        CARGO WORKSHOP INC.

                                              _____/s/ Javier Carcamo_____
                                              By: Javier Carcamo, President

                                              _____/s/ Dylan Gould_____
                                              By: Dylan Gould, Secretary